CAPITOL CAR CARE, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Capitol Car Care v. Commissioner
Docket No. 6875-76
United States Tax Court
T.C. Memo 1993-644; 1993 Tax Ct. Memo LEXIS 658; 66 T.C.M. (CCH) 1897; December 30, 1993, Filed *658 For petitioner: Ed J. Hagen (an officer). For respondent: Thomas J. Miller. CANTREL
CANTREL
MEMORANDUM OPINION CANTREL, Special Trial Judge: This case was assigned pursuant to section 7443A(b)(3), I.R.C. 1986, and Rules 180, 181, and 182, and submitted under Rule 122. [1]
In the notice of deficiency issued to petitioner, respondent determined deficiencies in Federal income taxes and additions to tax for the calendar years 1968 through 1970 in the following respective amounts: Additions to Tax
Years
Deficiency
Section 6653(a)
1968
$ 4,248.19
$ 227.63
1969
2,730.41
136.52
1970
702.49
35.12
The following adjustments to income were determined by respondent in the notice of deficiency: 1968
1969
1970
Management fee income
$ 18,000.00 $ 9,000.00
$ 3,750.00
Auto expense
[1] 193.00 [1] 902.69
[1] 996.97
Insurance expense
[1] 619.75 -0-
[1] 918.45
Loss on appliance
-0- 1,380.00
-0-
Net Operating Loss
deduction (1,258.26
-0-
-0-
*659 The remaining issues we must decide are whether petitioner: (1) Received unreported management fees from Western Bank and Office Supply Company (Westbanco) in 1968 in the amount of $ 9,000; (2) received unreported management fees from Acker Industries, Inc. (Acker) in 1968, 1969, and 1970 in the respective amounts of $ 9,000, $ 9,000, and $ 3,750; (3) sustained a loss on an appliance in 1969 in the amount of $ 1,380; and (4) is liable for the additions to tax under section 6653(a). For simplicity and clarity, we will first state a few general legal principles applicable to all of the issues, followed by background facts and then combine our findings of fact and opinion with respect to each issue. General Legal Principles
The Commissioner's deficiency determinations are entitled to a presumption of correctness, and the taxpayer has the burden of overcoming that presumption. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933); Erickson v. Commissioner, 937 F.2d 1548, 1551 (10th Cir. 1991), affg. T.C. Memo. 1989-552. [2] The fact that this case is fully stipulated does not change the burden *660 of proof. Rule 122(b); Service Bolt & Nut Co. Trust v. Commissioner, 78 T.C. 812, 819 (1982), affd. on other issues 724 F.2d 519 (6th Cir. 1983). In our judgment, after an exhaustive examination of this record, we conclude that petitioner has failed to sustain its burden of proof on any of the four issues to follow. Background Facts
Ed J. Hagen (Mr. Hagen) graduated from the Frankfurt School of Economics, Frankfurt, West Germany with a Master of Economics Degree. Thereafter, he obtained a Master of Business Administration Degree from Stanford University. While at Stanford he took a course in auditing for which he received a grade of B. As of the beginning of 1964, Mr. Hagen was engaged in business as a registered broker-dealer in securities under the Securities and *661 Exchange Act of 1934. He operated as a sole proprietor under the name of Hagen Investments during the years 1964 through 1966 and until approximately April 1, 1967, at which time Hagen Investments, Inc. succeeded Mr. Hagen as the registered broker-dealer. It operated as the registered broker-dealer from approximately April 1, 1967 to January 26, 1970. Mr. Hagen was involved in other business enterprises which are relevant to this case. The first is Hagen Holding Corporation, formed in 1963 to purchase and own controlling interests in other corporations. Hagen Holding Corporation changed its name to Alliance Corporation on September 12, 1966. Mr. Hagen was its president from its formation on November 20, 1963 until March 31, 1969. The second is petitioner, which was formed in 1964 and which apparently operated a filling station. The third is Acker, an Oklahoma corporation involved in the manufacture of metal products, which became a subsidiary of Hagen Holding Corporation in late 1964. The fourth is Westbanco, a wholly owned subsidiary of Hagen Holding Corporation. Westbanco, which was in the office supply business, was acquired by Hagen Holding Corporation in early 1967. *662 [3] Mr. Hagen was the controlling officer in all of these businesses at all times relevant to this proceeding.
The facts have been fully stipulated and are so found. The stipulation of facts and supplemental stipulation of facts and related exhibits are incorporated herein by this reference. Petitioner was incorporated under the laws of the State of Oklahoma. Its principal office on the date the petition was filed was located at 5000 N.W. 31st Street, Oklahoma City, Oklahoma. The petition was signed Ed. J. Hagen, vice president. Petitioner filed the following returns with the Director of the Internal Revenue Service Center at Austin, Texas: (1) Timely U.S. Corporation Income Tax Returns for 1968, 1969 and 1970; (2) an amended return for 1969 on March 16, 1971; and (3) amended returns for 1968-1970. Management *663 Fees (Westbanco)
At a board of directors' meeting on April 21, 1967 Mr. Hagen was elected chairman of the board and treasurer of Westbanco. Vincent W. Messer (Mr. Messer) was elected its president. During that meeting Mr. Hagen stated that Westbanco would pay petitioner $ 750 a month for "services rendered" beginning in May 1967. Mr. Messer vehemently objected to the payment thereof. However, after requesting that his objection be recorded in the minutes of the meeting, he agreed to pay the fee. About a year later, on April 24, 1968, at another board of directors' meeting Mr. Messer requested Mr. Hagen to discontinue the requirement that the $ 750 management fee be paid, emphasizing the serious cash flow problem that Westbanco was experiencing. Mr. Hagen refused. The record contains copies of 12 Westbanco checks (each in the amount of $ 750) totaling $ 9000 for 1968, all made payable to petitioner and signed by Mr. Messer. Those checks were endorsed by petitioner and deposited to its account. Indeed, Mr. Hagen, in corroboration of the foregoing, stated under oath in answering interrogatories, that Westbanco paid $ 750 a month in management fees to petitioner from May 1967 *664 to April 1970. The parties stipulated that "if called to testify, a witness from Western Bank & Office Supply Co. will state that it always did and still does consider the $ 750 monthly payments it made to the petitioner in 1968 as management fees paid to the petitioner, and not as repayment of loans." The record verifies that stipulation. Accordingly, respondent's determination that petitioner received unreported management fees from Westbanco in 1968 in the amount of $ 9000 is sustained. Management Fees (Acker)
The record contains copies of 29 Acker checks, each in the amount of $ 750, all made payable to petitioner and signed by Ingeborg Acker, one of Acker's officers. The checks were endorsed by petitioner and deposited to its account. The foregoing fees were authorized by the board of directors of Alliance Corporation on September 21, 1966. The checks in payment of said fees totaled $ 9000, $ 9000 and $ 3,750 for the years 1968, 1969, and 1970, respectively. These payments were corroborated by Mr. Hagen under oath in answers to interrogatories that were served on him wherein he stated that Acker paid $ 750 per month in management fees to petitioner from October *665 1967 through May 1970. The parties stipulated that "if called to testify, a witness from Acker Industries, Inc., will state it always did and still does consider the $ 750 monthly payments it made to the petitioner in 1968, 1969, and 1970 as management fees paid to the petitioner, and not as repayment of loans." The stipulation is amply supported by the record. In view thereof, respondent's determinations that petitioner received unreported management fees from Acker in 1968, 1969, and 1970 in the respective amounts of $ 9,000, $ 9000 and $ 3,750 are sustained. Claimed $ 1,380 loss
On an attachment to its 1969 return petitioner claimed a loss of $ 1,380 for an appliance, which respondent disallowed. Allegations respecting the claimed loss were made in the petition. Respondent denied those allegations in the answer to the petition. This is the sum of the information presented on this matter. A tax return is merely a statement of the taxpayer's claim and does not establish the truth of the matters set forth therein: Wilkinson v. Commissioner, 71 T.C. 633, 639 (1979); Roberts v. Commissioner, 62 T.C. 834, 837 (1974); *666 Halle v. Commissioner, 7 T.C. 245, 247-248 (1946), affd. 175 F.2d 500 (2d Cir. 1949). Further, unadmitted allegations in pleadings do not constitute evidence. Rule 143(b); Evans v. Commissioner, 48 T.C. 704, 709 (1967), affd. per curiam 413 F.2d 1047 (9th Cir. 1969). Finally, failure to produce evidence, in support of an issue of fact as to which a party has the burden of proof and which has not been conceded by respondent, may be grounds for determination of the issue against petitioner. Rule 149(b). Respondent's determination on this issue is sustained. Section 6653(a) additions to tax
The evidence clearly shows that petitioner received sizable amounts of management fee income from Westbanco and Acker in the years at bar. The person who caused those fees to be paid, Mr. Hagen, controlled all the businesses involved, and he knew those fees were not reported on petitioner's returns. Petitioner has failed to show that the underpayment of tax was not due to negligence. Rule 142(a); Bixby v. Commissioner, 58 T.C. 757 (1972). *667 Indeed, in our view, the failure to report those sizable amounts constitutes negligence. Respondent is sustained in the determinations on this issue. To accord with the foregoing, Decision will be entered for respondent. Footnotes
1. All section references are to the Internal Revenue Code in effect for the years in issue unless otherwise indicated, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
1. These adjustments, reflecting disallowances by respondent, were conceded by petitioner in the stipulation of facts. Moreover, these same adjustments were found to be constructive dividends to petitioners in a related case, Hagen v. Commissioner, T.C. Memo. 1989-473, affd. on these issues without 951 F.2d 1259↩ (10th Cir. 1991).published opinion 2. We observe that, in the absence of a stipulation to the contrary, venue on appeal of this case lies in the United States Court of Appeals for the Tenth Circuit. See sec. 7482(b).↩
3. See Hagen v. Commissioner, T.C. Memo. 1989-473, affd. in part, revd. in part and remanded without published opinion 951 F.2d 1259↩ (10th Cir. 1991).